IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| Kimberly Manns <br> 20550 County Rd. 265 <br> Ridgeway, Ohio 43345 | Case No. |
| And | Judge: |
| Debra Erwin <br> 487 New Park Dr. <br> Marion, Ohio 43302 | Magistrate: |
| Plaintiffs, | |
| v. | |
| BRC Properties, Inc. <br> 600 Stonehenge Parkway, 2nd Floor <br> Dublin, Ohio 43017 | **Complaint with Jury Demand Endorsed Herein** |
| Defendants. | |

## JURISDICTION AND VENUE

1. This is an action for damages arising out of Defendants' violation of: (1) Americans with Disabilities Act 42 U.S.C.S. §12101 et seq., (2) Ohio Revised Code §§4112.02 and 4112.99 (Ohio's Fair Employment Practices Act); and (3) the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

2. This court has subject-matter jurisdiction over Plaintiff's federal law claims pursuant to 42 USCS §12117, 29 U.S.C.S. §216 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court because Defendant's headquarters are located in Franklin County, Ohio.

## PARTIES

4. Plaintiff Kimberly Manns is an individual residing in Hardin County.

1

5. Plaintiff Debra Erwin is an individual residing in Marion County.

6. Defendant BRC Properties, Inc. (hereinafter "Defendant") is an Ohio Corporation, licensed and doing business in Franklin County, Ohio and in other Counties throughout Ohio.

**BACKGROUND FACTS RELEVANT TO BOTH PLAINTIFFS**

7. Manns worked for Defendant for twelve years beginning in 2005.

8. She was employed as a Property Manager at Seton Kenton, a low-income, senior living community located in Kenton, Ohio.

9. Erwin was employed by Defendant for twenty-two years beginning in 1992.

10. Erwin was employed by Defendant as a Property Manager at Seton Square Marion, a low-income, senior living community located in Marion, Ohio.

11. Plaintiffs are each disabled as that term is defined by the ADA.

12. As Property managers, Plaintiffs were in charge of advertising vacancies, taking tenant applications, overseeing the move-in and move-out process, ensuring that apartments were well maintained, fielding tenant questions and assisting them with everyday needs, collecting rent, completing government paperwork, and performing a plethora of other duties.

13. The properties managed by Plaintiffs were subject to inspection by the Department of Housing and Urban Development ("HUD").

14. Plaintiffs each had a good history of HUD inspections.

15. Until the last two months of her tenure, Manns was never subject to any form of discipline or counseling and was consistently praised for her good performance.

16. Erwin was only disciplined once in her 22 years of employment for a minor infraction.

17. Erwin received high scores from her tenants and good performance reviews throughout her tenure.

**BACKGROUND FACTS RELEVANT TO PLAINTIFF ERWIN**

18. On January 22, 2014 Erwin wasn't feeling well and told her immediate supervisor, Doug Decker, that she might need some time off from work.

19. Four days later, the Defendant issued a new Long Term Disability policy reducing the benefits available to employees.

20. At the time the policy changed there were at least three other employees on disability leave including Erwin's domestic partner, Gary Bailey, who was employed as a maintenance technician at the same location.

21. Gary Bailey was later terminated while on disability leave after 17 years of employment with Defendant.

22. The day after her husband was terminated, Erwin called Doug Borror to complain about how he had been treated.

23. When she asked why he was fired, Borror stated that Alice Myers stated it "was time and that Gary had been off work too long."

24. On January 30, 2014, Erwin passed out while at her doctor's office. Her doctor placed her off work until March 17, 2014 due to a pulmonary embolism and other diagnoses.

25. Erwin's leave was extended twice.

26. Her final return to work date was set for May 21, 2014 and she was prepared to return to work that day.

27. Erwin faxed her release to return to work on or about April 19, 2014.

28. One day later she received a telephone call from her supervisor who gave her the option of resigning her position or being fired.

29.     Although she had only been off work for three (3) months, the Defendant declined her request to extend her leave until May 21, 2014.

30.     Erwin pleaded to be allowed to return to work because Gary Bailey had been terminated and she needed her job.

31.     Erwin's supervisor Doug Decker told Erwin that he had fought to keep her employed, but Alice Myers (who functions as the Company's HR Representative and Accountant) was against keeping her.

32.     Ms. Myers had previously informed Gary Bailey that she was tired of babysitting employees who were sick.

33.     In September 2013 Myers told Plaintiff Erwin that, "all you old people are a liability."

34.     Erwin was not allowed to return to work and was fired.

**BACKGROUND FACTS RELEVANT TO PLAINTIFF MANNS**

35.     In or around March 2015, Amanda Jeffries was promoted to the position of Division Manager and became Manns' immediate supervisor.  This was her fourth Division Manager in the period of five years.

36.     Seton Kenton, where Manns worked, is located in Hardin County where there is an over-abundance of subsidized senior housing.

37.     Despite this, Manns was able to consistently maintain an occupancy rate in the mid-ninety percent range.

38.     Prior to 2017, management never raised an issue about Manns' vacancies because there was no question that she was doing everything she could to fill the units.

39. This included occasionally seeking age waivers in order to allow her to rent to prospective tenants between the ages of 55 and 60 years old. Manns maintained a waiting list of prospective tenants in this age range.

40. In early 2016, Seton Kenton was at 93% occupancy (with five empty apartments.)

41. Because Manns was having difficulty finding viable prospective tenants over the age of sixty, she asked Amanda Jeffries to complete an age waiver.

42. She made this request in February 2016 and repeated the same request at least five times during the subsequent twelve months. Ms. Jeffries repeatedly responded by saying that she was "working on it." The age waiver was not forthcoming.

43. In March 2016 Manns was diagnosed with ADD and asked Ms. Jeffries for accommodation, including providing her with written "to do" lists.

44. Jeffries never complied with her requests for accommodation.

45. In July 2016 Manns fell at work and suffered a back and shoulder injury. She filed a workers compensation claim and received ongoing treatment.

46. On January 3, 2017 Manns returned from a two week vacation to find Ms. Jeffries and Compliance Manager Kathy Carroll waiting in her office. They informed her that they were there to perform an audit of her files.

47. About forty-five minutes later, Ms. Jeffries emerged from the "audit" and approached Manns to inform her that she and Ms. Carroll had formulated a plan to fill the vacancies at the complex.

48. Manns immediately reminded Ms. Jeffries of her request for an age waiver and again, Ms. Jeffries repeated her standard response, "I'm working on it."

5

49. Ms. Jeffries then handed Manns a "corrective action plan." The summary of the situation stated that, "Seton Kenton currently has 8 vacant units dating as far back as 4/30/16.…Currently the property is losing $7,016.00 per month."

50. The plan indicated that BRC is "legally obligated by government agencies to ensure that Seton Kenton performs at an occupancy rate of 92% or higher."

51. According to this document, Manns was required to reduce the vacancy rate and achieve 92% occupancy by February 15, 2017 or risk being terminated. This was an impossible timeline.

52. Manns refused to sign the document because it was inaccurate.

53. Ms. Jeffries informed Manns that her plan for filling the vacancies was to conduct an open house on February 3, 2017.

54. Ms. Jeffries instructed Manns to create, print and distribute approximately 2000 flyers, decorate the common areas, design and assemble water bottle labels, invite the mayor to attend, create a movie-themed cupcake stand, and stage a vacant unit – all within thirty days, in addition to her normal duties.

55. On January 6, 2015 Manns spoke to Ms. Jeffries via telephone. Ms. Jeffries asked about Manns' back condition and how she was doing.

56. On February 1, 2017 Manns' position was posted as vacant on Indeed.com.

57. Despite Manns' efforts to generate interest in the open house, five people showed up. One attendee begged for an age waiver to allow him to apply.

58. On February 10th Manns attempted to contact Janice Rausch with Ohio Capital Corporation for Housing to inquire about the occupancy rate requirement detailed in the Corrective Action Plan.

59. Manns was trying to ascertain when HUD's occupancy requirements changed and whether market forces were considered. According to the performance plan, OCCH was monitoring the property due to the "high" vacancy rate.

60. Manns also contacted Alice Myers to see if she knew anything about the legal requirements. Ms. Myers informed Manns that there was nothing in writing.

61. Because Manns questioned the Defendant's motives for applying these new standards, she drove to Columbus on February 14, 2017 to meet with BRC Vice President Terry George.

62. Manns attempted to plead her case to Mr. George.

63. She detailed her history at Seton Kenton, including historical vacancy rates and successes.

64. She informed him of her repeated requests for age waivers.

65. Manns complained that it appeared that she was going to be fired and Defendant was continuing a pattern of terminating older property managers (and other employees) with health issues and disabilities.

66. Manns pointed to several examples of older employees terminated after many years of loyal service and good performance when they became ill.

67. For example, former employee Debra Erwin was fired only a few days before she was scheduled to return from a disability leave of absence. She pointed out that, like her, Erwin was in her late 50s.

68. Three other older and disabled employees, Aline Taylor, Gary Hoberty, and Gary Bailey were forced out of their positions while on disability leave.

69. Mr. George denied discriminating against older, disabled employees.

70. On February 15, 2017 Manns was placed off work by her doctor due to her own disability.

7

71.     Manns went into her office to fax her doctor's certification to Ms. Jeffries. While in the process of faxing the note, Ms. Jeffries appeared at the office and informed her that she was terminated.

72.     The reason she gave for Manns' termination was that her occupancy rate fell below the acceptable percentage.

73.     Until January 2017, Manns' performance had never been questioned or criticized.

74.     Within the first two months of 2017, she went from having no discipline to being terminated without the benefit of progressive steps.

75.     BRC informed the Ohio Department of Job and Family Services that she was terminated because she did not work the required schedule.

76.     In September 2017 Manns filed an EEOC Charge alleging age discrimination, disability discrimination, and retaliation. She alleged a pattern and practice of discrimination and stated that she was filing the charge on behalf of herself and the others who she specifically named, including Debra Erwin and her husband.

77.     Manns requested and received a right to sue letter on March 30, 2018.

**FACTS RELATED TO MANNS' FLSA CLAIMS**

78.     From 2005 until 2016 Ms. Manns was paid an hourly wage rate and was designated as a non-exempt employee for purposes of overtime compensation.

79.     She often worked overtime and was paid time and one-half her normal hourly rate for all hours worked in excess of forty hours per week.

80.     However, because the Company complained about paying overtime, she frequently did not report it and worked off the clock.

8

81. In January 2016 she was switched to a salary wage rate and designated as exempt from overtime.

82. She continued to work overtime as necessary, but was not compensated for it.

83. In 2017, her wage was switched back to an hourly rate and she was paid for her overtime.

84. Manns did not meet the requirements for overtime exemption under 29 CFR §541 as either an administrative or executive employee.

85. In switching Manns to an "exempt salary" position for 12 months, Defendant did not have a good faith belief that it was complying with the Fair Labor Standards Act.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT

86. Plaintiffs restate and incorporate the foregoing allegations as if completely rewritten herein.

87. Defendant is an "employer" as defined by 42 U.S.C. § 12111(5).

88. During all relevant times herein, Plaintiffs were disabled as that term is defined by 42 U.S.C. § 12102(1).

89. Defendant regarded Plaintiffs as disabled.

90. Plaintiff Manns had a record of disability.

91. Alice Myers, Defendant's Accountant, made repeated derogatory remarks about employees with disabilities, especially those who needed accommodation and/or used disability leave.

92. Myers was instrumental in the decision to terminate (or force the resignation of) the other employees who used disability leave or requested accommodation: Gary Hoberty; Gary Bailey, Cynthia Fisher, & Aline Taylor.

9

93. Both Plaintiffs were qualified for their positions and had good work records.

94. At all times relevant herein, Plaintiffs were able to perform the essential functions of their job with or without reasonable accommodations.

95. Plaintiff Erwin was terminated while on an approved medical leave of absence despite having been released to return to work at full duty.

96. Defendant Manns was subjected to discipline and increased scrutiny after she informed Defendant of her disabilities.

97. Manns was terminated on the day she was requesting a leave of absence due to her disability.

98. The discharge of Plaintiffs under the circumstances described above constitutes discrimination based on disability in violation of the Americans with Disabilities Act, as amended.

99. Defendant acted with malice and/or reckless indifference to the protected rights of Plaintiffs. Therefore, Defendant is liable for punitive damages.

100. As a result of the discrimination, Plaintiffs have suffered lost wages and benefits (past and future), compensatory damages, emotional distress, mental anguish, loss of enjoyment of life, and other damages to be shown at trial.

### COUNT II
### DISABILITY DISCRIMINATION IN VIOLATION OF
### OHIO'S FAIR EMPLOYMENT PRACTICES ACT

101. Plaintiffs restate and incorporate the foregoing allegations as if completely rewritten herein.

102. Defendant is an "employer" as that term is defined by ORC §4112 et seq.

103. During all relevant times herein, Plaintiffs were disabled as that term is defined by Ohio law.

104. Defendant regarded Plaintiffs as disabled.

105. Plaintiff Manns had a record of disability.

106. Alice Myers, Defendant's Accountant, made repeated derogatory remarks about employees with disabilities, especially those who needed accommodation and/or used disability leave.

107. Myers was instrumental in the decision to terminate (or force the resignation of) the following employees who used disability leave or requested accommodation for their disability: Gary Hoberty, Gary Bailey, Cynthia Fisher, & Aline Taylor.

108. Both Plaintiffs were qualified for their positions and had good work records.

109. At all times relevant herein, Plaintiffs were able to perform the essential functions of their job with or without reasonable accommodations.

110. Plaintiff Erwin was terminated while on an approved medical leave of absence despite having been released to return to work at full duty.

111. Defendant Manns was subjected to discipline and increased scrutiny after she informed Defendant of her disabilities and requested accommodation.

112. Manns was terminated on the day she was requesting a leave of absence due to her disability.

113. The discharge of Plaintiffs under the circumstances described above constitutes discrimination based on disability in violation of the Americans with Disabilities Act, as amended.

114. Defendant acted with malice and/or reckless indifference to the protected rights of Plaintiffs. Therefore, Defendant is liable for punitive damages.

115. As a result of the discrimination, Plaintiffs have suffered lost wages and benefits (past and future), compensatory damages, emotional distress, mental anguish, loss of enjoyment of life, and other damages to be shown at trial.

## COUNT III
## RETALIATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

116. Plaintiffs restate and incorporate the foregoing allegations as if completely rewritten herein.

117. When Manns requested accommodation for her ADD, she was engaged in protected activity as that term is defined by the ADA.

118. When Manns complained that the Company was discriminating against disabled employees, including herself, she was engaged in protected activity as that term is defined by the ADA.

119. Defendant was aware of Manns' request for accommodation and her complaints.

120. Defendant's decision to increase scrutiny of Manns' performance and to discipline her for vacancy rates was causally related to Manns protected activity.

121. Defendant's decision to terminate Manns was causally related to her protected activity.

122. Manns has been damaged by Defendant's retaliation such that she is entitled to compensation therefore.

123. Defendant acted with malice and/or reckless indifference to the protected rights of Plaintiffs. Therefore, Defendant is liable for punitive damages.

## COUNT IV
## RETALIATION IN VIOLATION OF
## OHIO'S FAIR EMPLOYMENT PRACTICES ACT

124. Plaintiffs restate and incorporate the foregoing allegations as if completely rewritten herein.

125. When Manns requested accommodation for her ADD, she was engaged in protected activity as that term is defined by Ohio law.

126. When Manns complained that the Company was discriminating against disabled employees, including herself, she was engaged in protected activity as that term is defined by Ohio law.

127. Defendant was aware of Manns' request for accommodation and her complaints.

128. Defendant's decision to increase scrutiny of Manns' performance and to discipline her for vacancy rates was causally related to Manns protected activity.

129. Defendant's decision to terminate Manns was causally related to her protected activity.

130. Manns has been damaged by Defendant's retaliation such that she is entitled to compensation therefore.

131. Defendant acted with malice and/or reckless indifference to the protected rights of Plaintiffs. Therefore, Defendant is liable for punitive damages.

## COUNT V
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

132. Plaintiffs restate and incorporate the foregoing allegations as if completely rewritten herein.

133. Defendant is an employer as that term is defined by the Fair Labor Standards Act and is amenable to its requirements.

134. Manns was an employee engaged in commerce as that term is defined by the Act.

135. From 2005 until 2016 Plaintiff Manns was paid an hourly wage rate and was designated as a non-exempt employee for purposes of overtime compensation under the Fair Labor Standards Act.

136. She often worked overtime and was paid time and one-half her normal hourly rate for some but not all hours worked in excess of forty hours per week.

137. Defendant knew that Manns worked overtime.

138. Because the Company complained about paying overtime, she frequently did not report the hours when she worked overtime, but instead worked off the clock.

139. In January 2016 Defendant switched Manns to a salary wage rate and designated her as exempt from overtime even though her job did not change.

140. She continued to work overtime as necessary, but was not compensated for it.

141. In 2017, her wage was switched back to an hourly rate and she, once again, began receiving overtime pay.

142. Manns did not meet the requirements for overtime exemption under 29 CFR §541 as either an administrative or executive employee.

143. Defendant violated the Act by failing to pay Manns time and one half her normal hourly rate for all hours she worked in excess of 40 hours per week during 2016.

144. Manns worked at least 444 hours of overtime during 2016, for which she was not properly compensated.

145. In switching Manns to an "exempt salary" position for 12 months, Defendant did not have a good faith belief that it was complying with the Fair Labor Standards Act, thus, Manns should be permitted to look back three years for violations of the Act.

146. Manns is entitled to compensation for her unpaid overtime, is entitled to liquidated damages arising out of her FLSA claims, as well as reimbursement of her attorney's fees.

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant them:

   a. lost past and future wages and benefits;

   b. compensatory damages;

   c. an amount in excess of $75,000.00 in compensatory damages for garden variety emotional distress as provided under Ohio Revised Code Chapter 4112;

   d. an amount in excess of $75,000.00 for punitive damages;

   e. Manns compensation for her unpaid overtime;

   f. Liquidated damages as dictated by the FLSA;

   g. attorney fees and costs;

   h. prejudgment and post judgment interest;

   i. such other equitable and further relief as may be just and appropriate.

> Respectfully Submitted,
> */s/Sharon Cason-Adams*_____
> SHARON CASON-ADAMS (0067550)
> Adams & Liming, LLC
> 1335 Dublin Rd. Suite 104D
> Columbus, Ohio 43215
> Telephone: 614-488-2559
> Fax No: 614-488-2069
> Attorney for Plaintiff

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues triable before a jury.

> */s/Sharon Cason-Adams*_____
> SHARON CASON-ADAMS (0067550)

15